# United States District Court
# Central District of California
# Western Division

| | |
|---|---|
| JUAN L. DAVILA, | ED CV 18-02069 TJH (SPx) |
| Plaintiff, | |
| v. | Order |
| EURAMAX INTERNATIONAL, INC., et al., | |
| Defendants. | |

The Court has considered Plaintiff Juan L. Davila's unopposed motion for conditional class certification and preliminary approval of class action settlement [dkt. # 72], together with the moving papers.

Davila worked for Defendant Omnimax International, Inc. ["Omnimax"] from 2004 to February, 2018, as a nonexempt machine operator at Omnimax's facility in Perris Valley, California. Omnimax manufactures metal and vinyl products for the

building and transportation industries. According to Davila, Omnimax has since been "renamed" Omnimax International, LLC.

On July 3, 2018, Davila filed this putative class action in the Riverside County Superior Court against Amerimax Home Products, Inc. ["Amerimax"]; Euramax International, Inc. ["Euramax"]; and Omnimax International, U.S.A., Inc. Davila alleged that he was jointly employed by those three defendants, and asserted six California Labor Code claims: (1) Failure to pay overtime; (2) Failure to pay minimum wages; (3) Unlawful wage deductions; (4) Failure to provide meal breaks; (5) Failure to provide rest breaks; and (6) Failure to provide lawful wage statements. Davila's Complaint, also, included a claim under California's Unfair Competition Law ["UCL"], Cal. Bus. & Prof. Code §§ 17200, *et seq*.

On September 25, 2018, Omnimax – which asserted that it had been erroneously sued as Omnimax International, U.S.A., Inc. – filed its Answer, which Euramax joined. Amerimax was, apparently, never served.

On September 26, 2018, Omnimax removed pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2),(d)(6). Euramax joined in the removal.

On April 2, 2019, Davila filed a First Amended Complaint ["FAC"], which, *inter alia*, dropped Amerimax as a defendant and added an additional claim under the Private Attorney General Act ["PAGA"], Cal. Lab. Code §§ 2698-2699. On May 1, 2019, Euramax and Omnimax filed a joint Answer.

On September 5, 2019, this case was assigned to this Court. On December 10, 2019, Euramax and Omnimax filed a joint Amended Answer pursuant to a stipulation.

On July 8, 2022, the Court was informed that the parties had reached a class-wide settlement. On August 8, 2022, the Court granted the parties' stipulation for Davila to file a Second Amended Complaint ["SAC"] to effectuate the settlement, and to waive answers by Euramax and Omnimax. On August 10, 2022, Davila filed the SAC. In addition to the previous claims, the SAC added a claim under the Fair Labor Standards Act ["FLSA"], 29 U.S.C. § 201, *et seq.*, and a claim for waiting time

penalties for the wage and hour violations.

Davila, now, moves for conditional class certification and preliminary approval of the class action settlement.

**Parties to the Proposed Settlement**

The proposed settlement agreement was executed by only Davila and Omnimax International, LLC, but the agreement purports to, also, bind Euramax. Davila has not explained the relationship between Omnimax and Euramax, including whether Omnimax has the authority to bind Euramax.

The agreement releases the claims of class members against, *inter alia*, former Defendant Amerimax, but it is not clear why, given that Amerimax, apparently, is "not an existing entity."

Further, Omnimax International, **LLC** is not a defendant in the SAC. The Court cannot issue a judgment against an entity that is not a party to this case.

Consequently, before the Court can approve a class settlement, Davila must clarify, *inter alia,* the relationships between and among the various entities discussed above.

**Terms of the Proposed Settlement**

The putative class, for purposes of the proposed settlement, consists of approximately 143 nonexempt employees who worked at the Perris Valley facility between July 3, 2014, and the date of preliminary approval of the proposed settlement.

The proposed settlement is for a gross amount of $240,000.00, subject to deductions for: (1) Attorneys' fees of $80,000.00; (2) Litigation costs of $40,000.00; (3) Settlement administration costs of $8,000.00; (4) A PAGA deduction of $20,000.00 – $5,000.00 of which will be returned to class members whose claims arose within a year of the filing of the case, and $15,000.00 will be paid to the California Labor & Workforce Development Agency; (5) An incentive award of $7,5000.00 for Davila; and (6) A payroll tax reimbursement of $3,637.73 payable to Omnimax. After the proposed deductions, the net settlement amount payable to the putative class members

would be only $80,862.27 – just 34% of the gross settlement amount.

A class action may be settled only with the Court's approval. Fed. R. Civ. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). The Court's role is to determine "whether the proposed settlement, taken as a whole, is fair, adequate, and reasonable." *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). "Settlements that take place prior to formal class certification" – as here – "require a higher standard of fairness." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000).

To determine whether the proposed settlement is fair, the Court must weigh a non-exhaustive list of factors: (1) The settlement amount; (2) The strength of the putative class's case; (3) The risk of maintaining class action status throughout the trial; (4) The risk, expense, complexity, and likely duration of further litigation; (5) The extent of discovery and the overall stage of the case; and (6) The experience and views of counsel. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003).

Here, the first three *Staton* factors are intertwined. According to Davila and his class counsel, the settlement amount is based, at least in part, on their assessment of the strengths, or weaknesses, of their case and the likelihood that this case will be certified as a class action. Specifically, they calculated the putative class's maximum potential recovery to be $4,604,185.00, then discounted that amount by an average of roughly 94.8% to reach the $240,000.00 gross settlement amount.

Davila explained that $240,000.00 is consistent with what class counsel believes could be recovered at trial. To illustrate, Davila listed seven of the ten claims in the SAC and set forth: (1) His estimated maximum recovery for each claim; (2) Omnimax's class certification and merits arguments against each claim; and (3) The discount percentage that Davila assessed against each claim based, generally, on the legal and factual risk created by Omnimax's defenses.

Davila's rest period claim is illustrative. That claim is based on the allegation

that Omnimax unlawfully required employees to remain on work premises during rest breaks. First, Davila estimated the maximum recovery for that claim to be $1,908,752.00 based on his analysis of Omnimax's timekeeping records, which revealed around 100,355 shifts with potential violations. Second, Davila summarized each of Omnimax's arguments. For example, with regard to class certification, Omnimax argued that a rest break subclass could not be certified pursuant to *Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1038 (2012). Under *Brinker*, employers are not required to affirmatively police rest breaks. Omnimax's position is that *Brinker* makes it impossible for Davila to satisfy the commonality requirement, because to resolve the rest break claim the Court would have to determine why each individual employee did not take all of their rest breaks, thereby making it essentially impossible to resolve the claim on a class-wide basis. Third, based on the defenses, Davila discounted that claim by 80% based on the risk of non-certification of the class, for a total of $381,750.40. Davila, then, discounted that $381,750.40 amount by an additional 75%, based on the risk that the claim would not succeed on the merits, for a total claim value of $95,437.60. Davila did not explain why those discount percentages were appropriate. Regardless, that final discounted number, $95,437.60, is equal to a single 95% discount off the original estimated maximum recovery for the rest period claim.

For his other claims, Davila assessed similar discounts – for example, a similarly cumulative 70% class certification risk discount and 70% merits risk discount on his wage statement claim, and an 80% class certification risk discount and 65% merits risk discount on his unpaid wages/timekeeping claim. Then, without explanation, Davila discounted all of those amounts, again, by *another* 17%, across the board.

The following table sets forth the data provided by Davila – specifically, the maximum potential recovery for those seven claims; the proposed settlement for each claim, as calculated by the Court based on information provided by Davila; and the percentage of the settlement discount for each claim, also, calculated by the Court.

| Claim | Maximum Potential Recovery | Proposed Settlement Amount | Settlement Discount |
|---|---|---|---|
| First meal period | $628,367.00 | $39,122.05 | 94% |
| Second meal period | $571,665.00 | $24,910.79 | 96% |
| Rest period | $1,908,752.00 | $79,213.54 | 96% |
| Unpaid wages and timekeeping | $233,794.00 | $13,583.78 | 94% |
| Overtime | $19,012.00 | $7,939.62 | 58% |
| Wage statements | $272,650.00 | $20,366.54 | 93% |
| Waiting time | $424,545.00 | $26,428.03 | 94% |
| PAGA | $545,300.00 | $28,287.23 | 95% |

While the proposed settlement represents a significant discount from the maximum potential recovery, that, alone, does not make the proposed settlement unfair. *In re Mego*, 213 F.3d at 459. Indeed, courts have approved settlements in other cases that were a small fraction of the potential maximum recovery. In *In re Mego*, 213 F.3d at 458-59, the Ninth Circuit determined that a settlement that was one-sixth of the maximum potential recovery was fair based on, *inter alia*, the District Court's finding that the class's claims would be difficult to prove. In *Viceral v. Mistras Grp., Inc.*, No. CV 15-02198 EMC, 2016 WL 5907869, at *7-*8 (N.D. Cal. Oct. 11, 2016), the Northern District of California determined that a proposed settlement that amounted to a nearly 92% discount was fair, based on the plaintiff's acknowledgment, at a hearing, that the defendant had refuted the plaintiff's evidence of wage and hour violations.

The problem, here, is that Davila failed to provide the Court with a sufficient factual basis so that it can approve the proposed discounts as fair. The Court's role in evaluating the settlement, here, is not to reach an ultimate judgment on the merits of Davila's class claims, or to make Davila disprove the merits of his class claims. *See Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). However, the Court must be able to determine whether the

settlement is "the product of an arms-length, non-collusive, negotiated resolution[.]" *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). For the most part, Davila demonstrated that his class claims suffer from various legal and factual risks. However, he failed to connect those risks to the proposed settlement amounts. Why, for instance, is 95%, and not 65%, or 45%, the appropriate discount for his rest period claim? In evaluating a proposed settlement, "[g]reat weight is accorded to the recommendation of counsel[.]" *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016). However, here, the proposed settlement amount is supported with merely broad and conclusory assurances from class counsel. Further, because the proposed settlement was not the result of a mediator's proposal, the Court cannot assume that it was "the product of an arms-length, non-collusive, negotiated resolution[.]" *See Rodriguez*, 563 F.3d at 965. Though the parties engaged in mediation, the proposed settlement was reached only after mediation had failed.

Additionally, Davila did not explain how the three class claims that he did not discuss – unlawful deduction, UCL, and FLSA – factor into the proposed settlement. It is not clear to the Court whether the proposed settlement includes those three additional claims.

In summary, without a sufficient factual basis, the proposed gross settlement amount appears to be arbitrary. As such, the Court cannot approve the proposed settlement without violating its obligation to ensure that the settlement is fair to the absent class members. *See In re Syncor*, 516 F.3d at 1100.

**The Proposed Settlement Allocation Method**

Davila proposed a *pro rata* distribution of the settlement based on the proportionate number of shifts worked by each class member during the class period. Davila failed to explain why that method is better than a method based on an analysis of the number of violations that occurred during each shift for each putative class member. The putative class, here, is relatively small, making it seemingly feasible to use Omnimax's records to calculate the fairest distribution.

**The Proposed Incentive Award**

Davila requested an incentive award of $7,500.00 for himself. Incentive awards are justified only if they are reasonable. *Staton*, 327 F.3d at 976, 977. Here, Davila's request is based on, *inter alia*, the work he did to locate witnesses, provide documents, conduct research, respond to discovery, and prepare for and attend a full-day deposition. While those types of activities justify an incentive award, *see Rodriguez*, 563 F.3d at 958-59, the proposed amount, here, appears to be excessive, especially when considered in light of the small net settlement amount and a comparison between the maximum potential recovery and the proposed settlement amount.

**The Requested Attorneys' Fees**

Davila requested attorneys' fees of $80,000.00, or approximately 33.3% of the gross settlement amount. However, he failed to explain why the Court should depart from the Ninth Circuit's 25% benchmark for class action contingency awards. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 273 (9th Cir. 1989); Fed. R. Civ. P. 23(e)(2)(C)(iii).

**The Requested Litigation Costs**

Davila requested $40,000.00 for litigation costs, separate from the settlement administration fees, but failed to explain what those costs entailed. Davila explained that he would fully brief the litigation costs when he seeks final approval of the settlement. *See Class Plaintiffs*, 955 F.2d at 1276. However, the Court cannot determine whether the proposed settlement is fair, adequate, and reasonable until it determines whether all of the proposed allocations are justified, especially given small net settlement amount.

**The Remaining *Staton* Factors**

Based on the inadequate record, the Court cannot fully consider the remaining *Staton* factors.

**Conditional Class Certification**

To conditionally certify this putative class action, Davila bears the burden of

establishing all four requirements of Fed. R. Civ. P. 23(a): (1) Numerosity of proposed class members; (2) Commonality of issues of fact and law; (3) Typicality of the named representatives' claims; and (4) Adequacy of the named representatives and class counsel to fairly and adequately pursue the action. *See Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010). He, also, bears the burden of establishing at least one of the requirements of Fed. R. Civ. P. 23(b). *See Rodriguez*, 591 F.3d at 1122. Here, Davila seeks certification pursuant to Fed. R. Civ. P. 23(b)(3), which requires a showing that common questions predominate over individualized issues and that class adjudication is superior to other available methods.

The requirements of Rule 23(a) and (b) are "undiluted, even heightened" in the settlement context. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). That is because, *inter alia*, when a class action is settling, preliminary certification is the Court's only chance to assess whether certification is proper. *Amchem*.

Based on the current record, the Court cannot make an informed decision as to certification. Indeed, Davila, himself, undermined his case for class certification when he stated, in his moving brief, that there is a very high risk that at least the majority of his claims would not be certified. For example, Davila implied that his rest break claim faces a serious challenge to certification due to a lack of commonality based on *Brinker*. The Court cannot certify Davila's class claims when even he cannot vouch for their certifiability. Moreover, it is not yet clear whether class counsel is fairly representing the putative class, for the various reasons set forth in this order. *See Briseño v. Henderson*, 998 F.3d 1014, 1022-23 (9th Cir. 2021).

**Conditional FLSA Collective Certification**

Davila, also, seeks to conditionally certify this case as a collective action under the FLSA. To do so, he must demonstrate that the putative collective members are similarly situated. *See* 29 U.S.C. § 216(b). Davila seeks to certify a FLSA collective that is almost identical to the putative class, except that the collective period began on July 3, 2015, instead of July 3, 2014.

Putative collective members are similarly situated if there is a shared issue of law or fact that is material to the disposition of their FLSA claim. *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1117 (9th Cir. 2018). Here, Davila and Omnimax stipulated that his FLSA claim was appropriate for conditional certification, but did not explain to the Court how the putative collective is similarly situated.

Additionally, the settlement agreement states that class members will receive a notice explaining that they will be opted into the FLSA collective if they cash or deposit their settlement check. However, pursuant to 29 U.S.C. § 256, an FLSA collective action does not commence for either the named plaintiff or any collective member until after the written consent of each to join the FLSA action is actually filed with the Court. *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). There is no indication, here, whether Davila filed his own consent form within FLSA's statute of limitations. Even if he did, his proposed opt-in plan does not provide any mechanism by which each member's written consent would be filed. *See Rangel v. PLS Check Cashers of Cal., Inc.*, 899 F.3d 1106, 1109 n.1 (9th Cir. 2018).

Consequently, at this juncture, this case cannot be conditionally certified as an FLSA collective action.

Accordingly,

It is Ordered that the motion for class certification and preliminary approval of the class settlement be, and hereby is, Denied with leave to renew.

Date: February 15, 2023

Terry J. Hatter, Jr.
Senior United States District Judge